# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID ALTON GIBSON, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 03-CV-0641-CVE-SAJ |
| | ) | |
| REGINALD HINES, Warden; | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF OKLAHOMA, | ) | |
| | ) | |
| Respondents. | ) | |

## OPINION AND ORDER

Before the Court is Petitioner's 28 U.S.C. § 2254 petition for a writ of habeas corpus (Dkt. # 1). Petitioner is a state inmate and is represented in this matter by counsel. He identifies four (4) claims in his petition and supporting brief (Dkt. # 2). Respondent filed a response (Dkt. # 5) and provided the state court records (Dkt. # 6) necessary for adjudication of Petitioner's claims. Petitioner did not file a reply to Respondent's response. For the reasons discussed below, the Court finds the petition for writ of habeas corpus shall be denied.

### *BACKGROUND*

During the fall of 1997, Petitioner David Alton Gibson, Jr., worked for Claude Stanley "Stan" Williamson constructing pole barns. Williamson, a world champion cowboy, had had a long-term relationship with Karie Harper, but the relationship ended in the fall of 1997. A couple of months later, Karie Harper married Rex Harper, but shortly thereafter, she resumed a relationship with Williamson. There was animosity between Williamson and Rex Harper. On January 13, 1998, Karie Harper broke off her relationship with Williamson for good.

On January 14, 1998, at about 1:30 p.m., Rex Harper was shot and killed as he drove a dump truck through a parking lot in Broken Arrow, Oklahoma.  In Tulsa County District Court, Case No. CRF-1999-1972, Petitioner was charged along with James Howard Gibbs, Stan Williamson, Hans Cameron Marshall, and Scott Douglas Fox, with Conspiracy to Commit Murder in the First Degree (Count 1), and with Willie Edward Hayes, Stan Williamson, and Hans Cameron Marshall, with Solicitation to Commit Murder in the First Degree (Count 2).  Petitioner was tried by a jury and convicted on both counts.  Pursuant to the jury's recommendation, he was sentenced to ten (10) years imprisonment on Count 1 and to life imprisonment on Count 2, with the sentences ordered to be served consecutively. Petitioner was represented at trial by attorney Timothy Wantland. Petitioner's co-defendant Stan Williamson was tried separately and convicted of Conspiracy to Commit Murder, but acquitted of Solicitation to Commit Murder.  He was sentenced to ten (10) years imprisonment on the conspiracy conviction.  Charges against the remaining co-defendants were dismissed.

Petitioner appealed to the Oklahoma Court of Criminal Appeals ("OCCA").  Represented on appeal by attorneys Allen Smallwood and Johnie O'Neal, Petitioner raised three (3) propositions of error as follows:

Proposition 1: (A) Error of the trial court in admitting the alleged co-conspirator hearsay statements against the appellant by way of counsel's stipulation without obtaining an express waiver by the appellant to assistance of counsel, and/or (B) Insufficient evidence for the trial court to find alleged co-conspirator's hearsay statements admissible under Section 2801(4)(b)(5).

Proposition 2: Ineffective assistance of counsel by failing to demand a separate Laske/Harjo hearsay hearing prior to Appellant's trial and by failing to object to conspiracy hearsay at trial.

Proposition 3:  The appellant's convictions must be reversed because the State of Oklahoma did not produce sufficient evidence of a conspiracy to commit first degree murder or of a solicitation to commit first degree murder.

(Dkt. # 5, Ex. A). On June 28, 2002, in No. F-2001-576, the OCCA rejected Petitioner's claims and affirmed the Judgment and Sentence of the state district court.  See Dkt. # 5, Ex. D.

On September 18, 2003, Petitioner filed his federal habeas corpus petition (Dkt. # 1), along with a supporting brief (Dkt. # 2).  Petitioner is represented in this matter by attorney Johnie O'Neal. In his petition, Petitioner identifies four (4) propositions of error as follows:

Ground 1:     The Oklahoma Court of Criminal Appeals denied the Petitioner his federal rights to a fair trial, to substantive due process, and to effective assistance of counsel when it affirmed the Petitioner's convictions based on an error in reading and interpreting the record from the trial court below.

Ground 2:     The Petitioner's Sixth Amendment Right to Effective Assistance of Counsel was denied because his trial attorney did not attend a requisite hearing for the Petitioner prior to his trial.  His trial attorney did not attend a hearing which could only be characterized as a "critical stage" of the trial, thereby rendering his state convictions void and his continued imprisonment a violation of the federal right to deprivation of liberty only after a defendant has been afforded the Due Process of Law guaranteed under the Fifth Amendment of the United States Constitution.

Ground 3:     The Petitioner's incarceration under judgments and sentences obtained by the process discussed above violates the federal due process clause for the additional reason that the evidence adduced by the State at trial is insufficient to support the convictions.  Evidence was introduced against the Petitioner which should have been excluded because trial counsel had violated the Petitioner's right to effective assistance of counsel.  Taken as a whole, the Petitioner's convictions are constitutionally infected with error to the extent that the court should hold that insufficient evidence exists to subject the Petitioner to a retrial and remand the case to the State of Oklahoma with instructions to dismiss because the evidence is insufficient and the Petitioner's confinement violates the federal due process clause.

Ground 4:     The Petitioner's incarceration under these particular judgments and sentences violates the federal protection of the double jeopardy clause contained in the Fifth Amendment of the United States Constitution against being punished twice for the same offense.

3

<u>See</u> Dkt. # 1.  In response to the petition, Respondent contends that Petitioner is not entitled to relief on grounds 1, 2, or 3 based on application of § 2254(d), (e)(1), and that ground 4 has never been presented to the state courts and, as a result, is procedurally barred. <u>See</u> Dkt. # 5.

*ANALYSIS*

**A.  Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).  <u>Rose v. Lundy</u>, 455 U.S. 509, 510 (1982). Petitioner raised his second and third grounds on direct appeal.  Therefore, those grounds are exhausted. However, Petitioner has never presented his first and fourth grounds to the state courts.  As a result, those grounds are unexhausted. Therefore, the petition contains exhausted and unexhausted claims and is subject to dismissal as a mixed petition.

Nonetheless, the Court finds that the claims are not precluded by the exhaustion requirement. Petitioner's first ground, challenging the accuracy of a finding of fact by the OCCA, can be characterized as an attempt to rebut the presumption of correctness this Court must afford a finding of fact made by a state court. The finding of fact at issue relates to the OCCA's resolution of Petitioner's ineffective assistance of counsel claim.  Therefore, this Court shall consider Petitioner's first ground in conjunction with his second ground alleging ineffective assistance of counsel.  For the reasons discussed in Part B below, Petitioner's request for habeas corpus relief based on the allegedly erroneous finding of fact by the OCCA shall be denied notwithstanding Petitioner's failure to exhaust state remedies. <u>See</u> 28 U.S.C. § 2254(b)(2). The Court also finds it would be futile to require Petitioner to return to state court to raise his unexhausted double jeopardy claim (ground 4) because it is clear that the state courts would impose a procedural bar on the claim as a result of

4

Petitioner's failure to raise the claim on direct appeal. As a result, consideration of the claim is not precluded by the exhaustion requirement. However, as discussed in Part C below, the Court finds the unexhausted double jeopardy claim shall be denied as procedurally barred.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. <u>See</u> <u>Michael Williams v. Taylor</u>, 529 U.S. 420 (2000).

**B.  Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas corpus relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  <u>See</u> 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 402 (2000); <u>Neill v. Gibson</u>, 278 F.3d 1044, 1050-51 (10th Cir. 2001).

As indicated above, Petitioner presented his second and third grounds to the OCCA on direct appeal.  The OCCA considered, but rejected, those claims.  <u>See</u> Dkt. # 5, Ex. D.  Therefore, the § 2254(d) standard applies to this Court's analysis of Petitioner's claims adjudicated on direct appeal.

> **1.   *Ineffective assistance of counsel (ground 2) and related challenge to finding of fact made by the OCCA allegedly providing basis for rejecting claim of ineffective assistance of counsel (ground 1)***

As his first proposition of error, Petitioner challenges a finding of fact made by the OCCA as part of its analysis of his ineffective assistance of counsel claim.  Specifically, Petitioner argues that the OCCA's opinion affirming his convictions on direct appeal was "based on an error in

5

reading and interpreting the record from the trial court below." <u>See</u> Dkt. # 1.  The Court shall analyze this claim as an attempt by Petitioner to rebut the presumption of correctness afforded a factual finding made by the OCCA.  The habeas corpus statute provides that "a determination of a factual issue made by a State court shall be presumed correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  The OCCA's factual finding contested by Petitioner is that "the record shows that Appellant's trial counsel was present at the *Harjo* hearing held before Williamson's trial."  (Dkt. # 5, Ex. D).

As stated above, Petitioner and his co-defendant Stan Williamson were tried separately.  Williamson was tried first, on October 23, 2000.  Petitioner was tried on April 9, 2001.  Petitioner acknowledges that a <u>Harjo</u>[1] hearing was held prior to the trial of his co-defendant, but complains that neither he nor his attorney was present at that hearing and that the trial court did not hold a separate <u>Harjo</u> hearing before his trial.  As a result, he alleges that the OCCA made an erroneous finding of fact concerning the hearing which provided the basis for denying relief based on ineffective assistance of counsel as argued on direct appeal.  This Court is required to accord the factual finding made by the OCCA a presumption of correctness.  To rebut the presumption of correctness, Petitioner must present clear and convincing evidence.  Petitioner has provided his own affidavit as well as affidavits of his family members and of counsel for his co-defendant Williamson supporting

---

[1]Under Oklahoma law, statements made by a co-conspirator during and in furtherance of a conspiracy which are offered against a party are admissible and do not constitute hearsay. <u>See</u> Okla. Stat. tit. 12, § 2801(4)(b)(5) (2001).  However, prior to admission of statements under that section, the trial court must hold an *in camera* hearing to make the determination of whether a conspiracy existed. <u>Harjo v. State</u>, 797 P.2d 338, 345 (Okla. Crim. App. 1990); <u>see also</u> <u>Omalza v. State</u>, 911 P.2d 286, 296 (Okla. Crim. App. 1995).

his claim that neither he nor his attorney was present at the hearing held for his co-defendant and that, as a result, the OCCA made an erroneous finding of fact concerning the <u>Harjo</u> hearing.  <u>See</u> Dkt. # 1, Exs. A, C, D, E, and G.

Although a docket entry made in Tulsa County District Court, Case No. CF-99-1972, reflects that on October 20, 2000, a hearing was held on the admissibility of statements and that Petitioner David Alton Gibson, Jr., and his attorney Tim Wantland were present, <u>see</u> Dkt. # 6, Original Record at 26, the affidavits provided by Petitioner support his contention that the docket entry is erroneous since the hearing held on October 20, 2000, was attended by co-defendant Williamson and his attorneys, and that neither Petitioner nor his attorney Timothy Wantland were present at that hearing.[2]  <u>See</u> Dkt. # 1, Exs. A, C, D, and E.  The Court accepts Petitioner's averment that he was not present at the hearing held October 20, 2000, for the purpose of determining prior to the trial of co-defendant Williamson the admissibility of purported co-conspirator statements.  Furthermore, the Court finds Petitioner has presented clear and convincing evidence in the affidavit of Jack Gordon, Jr., the attorney representing Petitioner's co-defendant, to support a finding that Petitioner's counsel Tim Wantland was not present at the hearing held October 20, 2000. As a result, the Court finds that the OCCA erroneously found, apparently in reliance on an erroneous docket entry, that Petitioner's counsel was present at the <u>Harjo</u> hearing held before the trial of Petitioner's co-defendant.

Nonetheless, the Court finds that the OCCA's erroneous factual statement does not entitle Petitioner to habeas corpus relief.  The statement was made as part of the state appellate court's

---

[2]The docket sheet for Tulsa County District Court, Case No. CF-99-1972, also contains an entry reflecting that the hearing held on Friday, October 20, 2000, at 13:30 p.m., was for defendant Claude Stanley Williamson.  <u>See</u> Dkt. # 6, Original Record at 4.

analysis of Petitioner's ineffective assistance of counsel claim.  That analysis contains additional, well-founded, reasons for rejecting Petitioner's claim of ineffective assistance of counsel.  As his second ground for relief asserted in this action, Petitioner claims that his attorney provided ineffective assistance when he did not attend a requisite hearing for Petitioner before trial. Specifically, Petitioner complains that his attorney failed to attend a <u>Harjo</u> hearing for determinations of the existence of a conspiracy and of the admissibility of statements made in furtherance of the conspiracy, and waived Petitioner's right to have a <u>Harjo</u> hearing.[3]  <u>See</u> Dkt. # 1. As indicated above, the OCCA considered and rejected this claim on direct appeal, stating as follows:

> We also reject Appellant's claim, in Proposition 2, that trial counsel was ineffective for not requesting another *Harjo* hearing specifically with regard to Appellant, and for not objecting to Williamson's statements on hearsay grounds.  As noted, the record shows that Appellant's trial counsel was present at the *Harjo* hearing held before Williamson's trial.  Although Appellant and Williamson were tried separately, the evidence of a conspiracy was essentially the same, albeit the roles of defendant and co-conspirator were, of course, reversed.  A second hearing to redetermine whether a conspiracy existed would have been superfluous; counsel's decision to forego this exercise in futility was an informed and reasonable one.  We find neither deficient performance nor actual prejudice resulting from counsel's decision.

(Dkt. # 5, Ex. D).

Petitioner is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel unless he establishes that the OCCA's adjudication of this claim was an unreasonable

---

[3]The Court notes that the affidavits of Petitioner's family members contain other allegations concerning the representation provided by Petitioner's trial counsel.  Specifically, the family members complain that Mr. Wantland was unprepared for trial, that he failed to explain to Petitioner and his family decisions made during trial, that he rested without presenting witnesses for the defense, that he failed to impeach witnesses with testimony from the preliminary hearing, and that he advised Petitioner not to testify in his own defense.  <u>See</u> Dkt. # 1, Exs. C, D, and E.  However, those allegations are not properly before the Court as they are not part of the claim of ineffective assistance of counsel identified in the petition.

application of Supreme Court precedent.  To establish ineffective assistance of counsel a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).

The Court finds that in this case Petitioner has failed to satisfy the prejudice prong of the Strickland standard.  The record reflects that Petitioner's counsel had a "representative" present at the hearing held October 20, 2000, and that during Petitioner's trial, after the conclusion of *voir dire* but before the reading of the Information, the trial court judge conducted a hearing held outside the presence of the jury and reviewed the record of the statements by Petitioner's co-defendant Stan Williamson, for the purpose of satisfying the requirement for a pretrial determination of the

9

admissibility of those statements as made during the course of and in the furtherance of a conspiracy.

See Dkt. # 6, Tr. Trans. Vol. II at 156-58.  The trial court judge stated as follows:

> Mr. Wantland has advised me and had advised the State previously that for the purpose of this hearing -- again, the Harjo -- there's some other case out of the State of Oklahoma that talks about the procedure for the determination of admissibility -- but for the purpose of this hearing only, that you would stipulate to the previous testimony offered at the preliminary hearing, at trial in the, if you will, case in chief, and at the previous hearing that was held to make the same determination that we had made before concerning the testimony of witnesses.
>    Willie Hayes has testified previously about statements made by Stan Williamson.  Ed Marshall has testified at a preliminary hearing concerning statements made by Stan Williamson.  And James Spider Gibbs has testified at both preliminary hearing, trial, and the Harjo hearing concerning statements made by Stan Williamson.  Kelly Thomason testified at trial concerning statements made by Stan Williamson.  And Robert Marshall testified at trial and may have testified at the hearing.  I'm not sure about that, but I know he testified at trial concerning statements made by Stan Williamson.

(Id. at 157).  The prosecutor clarified that Robert Marshall testified about statements made by

Petitioner leading the trial court judge to determine that witness Robert Marshall would not testify

as to statements made by Stan Williamson.  Id.  The trial court judge confirmed that "it's the first

four, Hayes, Marshall, Gibbs -- Ed Marshall, I should say, Gibbs and Thomason.  And that is the

stipulation; is that not correct?"  Id.  At that point, Petitioner's trial counsel advised the court that

"[t]his Court could take judicial notice of all those hearings, and I was present at most of them, and

I had counsel present at the other one as an observer."  See id. at 158.  As a result of that exchange,

the trial court found that it had been previously determined that the statements "were made during

the course of a conspiracy that involved, among others, Mr. Gibson and Stan Williamson; that that

conspiracy existed beginning in the fall, approximately October, and continued into the next year

into January -- some of these are outside of that time frame -- and that they were made, as I say,

during the course of and in the furtherance of the alleged conspiracy.  So I'll determine that those are admissible, as I previously have done." See id.

Thus, the record shows that Petitioner's attorney advised the trial court that either he or a representative had been present at all of the hearings and the trial of Petitioner's co-defendant. The trial court judge then made the determinations required under Harjo.  Petitioner provides nothing but conjecture to counter Mr. Wantland's representation made to the trial court judge that either he or a representative was present at all of the hearings  held in the case. Petitioner does not allege that his attorney had no notice or knowledge of the content of the statements.  In fact, Petitioner admits in his own affidavit that the evidence against him was the same evidence introduced at the earlier trial of his co-defendant Stan Williamson.  See Dkt. # 1, Ex. G at ¶ 19.

The Court further finds that counsel did not provide ineffective assistance in entering into the stipulation concerning the admissibility of the co-conspirator statements, in effect waiving Petitioner's right to confront witnesses at Harjo hearing. The Tenth Circuit has held that "counsel in a criminal case may waive his client's Sixth Amendment right of confrontation by stipulating to the admission of evidence, so long as the defendant does not dissent from his attorney's decision and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." United States v. Aptt, 354 F.3d 1269, 1282 (10th Cir. 2004) (quoting United States v. Stephens, 609 F.2d 230, 232-33 (5th Cir. 1980)); see also Hawkins v. Hannigan, 185 F.3d 1146, 1155 (10th Cir. 1999); Cruzado v. Puerto Rico, 210 F.2d 789, 791 (1st Cir. 1954) ("Where an accused is represented by counsel, we do not see why counsel, in his presence and on his behalf, may not make an effective waiver of [the right of confrontation]."); Wilson v. Gray, 345 F.2d 282, 286 (9th Cir. 1965) ("[T]he accused may waive his right to cross examination and confrontation and

11

. . . the waiver of this right may be accomplished by the accused's counsel as a matter of trial tactics or strategy."). Furthermore, counsel's decision to enter into a stipulation concerning the admissibility of evidence can be viewed as sound trial strategy if "the attorney appear[s] to have an objectively reasonable strategy" when he or she waives Confrontation Clause rights.  Bullock v. Carver, 297 F.3d 1036, 1058 (10th Cir. 2002).

In this case,  there is no evidence that Petitioner objected to the stipulation by counsel at the time it was made.  In determining whether the stipulation in this case was "objectively reasonable," the Court is bound to heed the Supreme Court's warning in Strickland, 466 U.S. at 689, against using hindsight to second-guess attorneys' tactical decisions. Under Strickland, the Court is required to impose a heavy presumption that "counsel's conduct falls within the wide range of reasonable professional assistance; that is, . . . the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 689 (internal quotation marks omitted). Similarly, under Hawkins, this Court must uphold counsel's waiver "so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy," 185 F.3d at 1155 (emphasis added). In light of those closely overlapping standards, the Tenth Circuit has held that an attorney's stipulation to admit evidence is a valid waiver unless the defendant can show that the stipulation constituted ineffective assistance under Strickland.  See Bullock, 297 F.3d at 1058 ("[B]ecause Mr. Bullock's ineffective assistance of counsel claims fail, his Confrontation Clause argument [based on hearsay to which counsel did not object] also fails."); Wilson, 345 F.2d at 287 n. 7 (quoting, with apparent approval, the district court's conclusion that "a reviewing court can not find a denial of the constitutional right to cross-examination merely on the basis of an error in trial tactics unless the error is so gross as to constitute a denial of adequate and effective assistance of

12

counsel"); cf. Murray v. Carrier, 477 U.S. 478, 487-88 (1986) (holding in the habeas context that inadvertent or ignorant attorney error does not constitute "cause" excusing procedural default unless it rises to the level of ineffective assistance).

In the instant case, Petitioner has not explained how he would have benefitted had a separate Harjo hearing been held prior to the commencement of his trial since the testimony offered at his trial was the same as heard by his attorney or a representative at the prior hearings and at the trial of his co-defendant. The Court agrees with the OCCA's determination that another admissibility hearing would have been "superfluous" and "an exercise in futility." See Dkt. # 5, Ex. D.  In light of the foregoing, the Court concludes that Petitioner has failed to demonstrate that his attorney's decision to stipulate to the admission of the co-conspirator's statements was not sound trial strategy or that he was prejudiced by counsel's failure to request a separate Harjo hearing prior to Petitioner's trial because the statements made by Williamson in furtherance of the conspiracy had been previously evaluated by the trial court judge and found to be admissible.  The Court further concludes that, although the OCCA's opinion contains an erroneous statement of fact concerning the hearing held October 20, 2000, the statement does not invalidate the state appellate court's rejection of Petitioner's claim of ineffective assistance of counsel. Petitioner has failed to demonstrate that the OCCA's rejection of his ineffective assistance of counsel claim was an unreasonable application of the Strickland standard.  Therefore, under 28 U.S.C. § 2254(d), he is not entitled to habeas corpus relief on this claim.

## 2. Sufficiency of the evidence (ground 3)

As his third ground for relief, Petitioner challenges the sufficiency of the evidence supporting his convictions.  Petitioner argues that the evidence was insufficient because it was based on

inadmissible hearsay testimony. In rejecting this claim on direct appeal, the OCCA cited <u>Moss v.</u>
<u>State</u>, 888 P.2d 509, 517-18 (Okla. Crim. App. 1994), and held as follows:

> the evidence showed that Appellant introduced Williamson to James Gibbs, who
> discussed finding someone to kill Rex Harper for money; that Appellant later asked
> Gibbs if he had been successful in fulfilling Williamson's request; that Appellant
> independently solicited help from several other people, on several different
> occasions, for the same purpose; and that Williamson solicited many of these same
> witnesses after Appellant did.  A rational juror could readily conclude that Appellant
> agreed to help Williamson find a killer for hire, and that he actively solicited others
> to that end.

(Dkt. # 5, Ex. D at 3).  As stated above, a writ of habeas corpus will not be issued on a state claim
adjudicated on the merits unless the claim "resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as determined by the Supreme Court
of the United States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts
in light of the evidence presented in the State court proceeding," <u>id.</u> at § 2254(d)(2). "[A]
determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C.
§ 2254(e)(1). Tenth Circuit authority is divided as to "whether, under AEDPA, we review a
sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual
finding under § 2254(d)(2) and (e)(1)." <u>Romano v. Gibson</u>, 239 F.3d 1156, 1164 n. 2 (10th Cir.
2001). Under either standard, Petitioner's claim in this case fails.

In examining Petitioner's sufficiency of the evidence claim, the appropriate inquiry is
"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v.</u>
<u>Virginia</u>, 443 U.S. 307, 319 (1979).  In evaluating the evidence presented at trial, the Court does not
weigh conflicting evidence or consider witness credibility. <u>Wingfield v. Massie</u>, 122 F.3d 1329, 1332
(10th Cir. 1997); <u>Messer v. Roberts</u>, 74 F.3d 1009, 1013 (10th Cir. 1996).  Instead, the Court must

14

view the evidence in the "light most favorable to the prosecution," <u>Jackson</u>, 443 U.S. at 319, and

"accept the jury's resolution of the evidence as long as it is within the bounds of reason." <u>Grubbs</u>

<u>v. Hannigan</u>, 982 F.2d 1483, 1487 (10th Cir. 1993).   Under the AEDPA, the Court must decide

whether the OCCA's decision that there was sufficient evidence to support a jury's finding of guilt

was contrary to or an unreasonable application of <u>Jackson</u>. See 28 U.S.C. § 2254(d)(1); <u>Spears v.</u>

<u>Mullin</u>, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

      As determined by the OCCA, the statements challenged by Petitioner were not inadmissible

hearsay and were properly admitted.  Those statements along with other evidence and testimony

presented at trial provide sufficient evidence to support the jury's finding of guilt of both conspiracy

to commit murder and solicitation to commit murder.  The jury heard James "Spider" Gibbs testify

that he was introduced to Stan Williamson by Petitioner in the fall of 1997, and that Williamson

asked him if he "knew someone who would take care of someone." <u>See</u> Dkt. # 6, Tr. Trans. Vol. II

at 195-198, 202.  Williamson also told Gibbs that Rex Harper was the man he wanted someone to

take care of. <u>Id.</u> at 199.  Gibbs further testified that he met again with Williamson 2-3 days later and

that Williamson asked if he had "got anything done for him." <u>Id.</u> Williamson offered Gibbs $5,000

and a diamond ring.  <u>Id.</u> at 201.  Willie "Bubby" Hayes testified that he saw Petitioner at the

Glenpool Motel around December of 1997, and that Petitioner asked him if he would be interested

in "taking care of a feller for Stan Williams (sic)." <u>Id.</u> at 214, 220.  Petitioner offered $10,000 and

indicated the money would come from Williamson. <u>Id.</u> at 214.  Hayes further testified that he spoke

to Williamson the next day and the Williamson asked him the same thing. <u>Id.</u> at 216. Ed Marshall

testified that on two occasions, Petitioner asked him if he knew of anyone who would take care of

someone and told him the pay would be $10,000.  <u>Id.</u> at 225-28. Robert Charles Marshall also

testified that Petitioner asked him if he knew of anyone who would take care of somebody.  Id. at 245.  Kelly Thomason testified that, in December 1997, Williamson called him and asked if he knew where he could get somebody taken care of.  Id. at 263.  The jury also heard testimony that Williamson received a check in the amount of $14,000 from Oklahoma Farm Bureau Mutual Insurance Company and that his bank records reflected a deposit of $4,100 and a cash-out receipt for $9,900.  Id. at 255-58.  Lastly, the jury heard testimony from a Broken Arrow Police Officer, C.B. Morrill, that Williamson's phone records had been subpoenaed and reflected that Williamson placed a total of 39 calls to Gibbs, with the first one made on October 6, 1997, and the last one on January 14, 1998.  Id. at 268-70.  Williamson placed a total of 81 calls to Petitioner's phone, with the first one made on August 7, 1997, and the last one on February 1, 1998.  Id. at 271.  Williamson placed a total of 50 calls to Hans Marshall, with the first one made on November 17, 1997, and the last one on May 1, 1998.  Id. at 272. On the day of the murder, January 14, 1998, Williamson called Hans Marshall at 10:30 a.m., Gibbs at 10:41 a.m., and Petitioner at 10:45 a.m.  Id. at 273; Vol. III at 326.  Rex Harper was shot and killed at 1:30 p.m.  No one received calls after 1:30 p.m.  Id. Vol. II at 274.

Upon review of the trial transcript, the Court agrees with the OCCA that the evidence presented at trial, viewed in the light most favorable to the prosecution, including properly admitted statements made during the course of and in the furtherance of a conspiracy combined with other testimony and evidence, was sufficient to support Petitioner's convictions.  The Court finds no room for reasonable debate as to whether the evidence at trial was sufficient for a rational juror to be convinced of that fact beyond a reasonable doubt.  The Court concludes that Petitioner has failed to satisfy the § 2254(d) standard and his request for habeas corpus relief based on a challenge to the sufficiency of the evidence shall be denied.

## C.  Procedural Bar

The doctrine of procedural default prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991).  "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985.  A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'"  Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991)).  Federal courts may apply an "anticipatory procedural bar" to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.  See Moore v. Schoeman, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002) (citing Hain v. Gibson, 287 F.3d 1224, 1240 (10th Cir. 2002)).

As discussed above, Petitioner has never presented his double jeopardy claim (ground 4) to the state courts and, as a result, the claim is unexhausted.  However, because Petitioner's habeas counsel served as co-counsel for Petitioner on direct appeal and admits that he chose to proceed with stronger claims on direct appeal and to omit the double jeopardy claim, the OCCA would undoubtedly refuse to consider the claim under Okla. Stat. tit. 28, § 1086 (providing that a claim omitted from a prior application may not be the basis of a subsequent application unless the court finds a sufficient reason for omission of the claim from the prior application).  The claim would be

procedurally barred under state law if Petitioner were to return to state court to exhaust it.[4]   As a result, application of an anticipatory procedural bar is appropriate.  The OCCA's  refusal to consider the claim pursuant to § 1086 would be an "independent" state ground because the bar resulted from Petitioner's failure to comply with state procedural rules and state law would be "the exclusive basis" for the ruling.  Maes, 46 F.3d at 985.  The Court also finds that the bar would be based on state law grounds adequate to preclude federal review.

Because of the procedural default of his claim in state court, this Court may not consider Petitioner's double jeopardy claim unless he is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claim is not considered.  See Coleman, 501 U.S. at 750.  The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials.  Id.  As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains."  United States v. Frady, 456 U.S. 152, 168 (1982).  A "fundamental miscarriage of justice" instead requires a petitioner

---

[4]The Court notes that even if Petitioner's double jeopardy claim were not subject to a procedural bar, the claim lacks merit and would be denied regardless of its exhaustion status pursuant to 28 U.S.C. § 2254(b)(2).  Petitioner's convictions for solicitation to commit murder and conspiracy to commit murder do not violate the Double Jeopardy Clause of the United States Constitution because each crime requires an element of proof that the other does not require. Under Oklahoma law, solicitation requires proof that the defendant urged, requested, or commanded another to commit an illegal act, but conspiracy does not; conspiracy requires an agreement to commit an illegal act, but solicitation does not. See Okla. Stat. tit. 21, § 421; OUJI-CR 2d 4-90. Thus, the two offenses are different for purposes of double jeopardy under the "same elements" test set forth by the United States Supreme Court in Blockburger v United States, 284 U.S. 299 (1932).

to demonstrate that he is "actually innocent" of the crime of which he was convicted.  <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991).

As indicated above, Petitioner did not file a reply to Respondent's argument that his double jeopardy claim is procedurally barred.  In the petition, however, Petitioner's counsel acknowledges that the claim is unexhausted, and asserts that his appellate counsel did not raise the double jeopardy claim on direct appeal because "counsel felt that the Oklahoma Court of Criminal Appeals would follow precedent and reverse the convictions because the Petitioner was denied his right to a *Harjo* hearing, which constituted reversible error."  <u>See</u> Dkt. # 1.  Thus, Petitioner's counsel admits that appellate counsel chose to omit the double jeopardy claim on direct appeal and assert what he believed to be stronger claims related to the <u>Harjo</u> hearing.  As indicated above, Petitioner's current counsel, Johnie O'Neal, served as co-counsel on direct appeal.  Petitioner's counsel does not assert that he or his co-counsel provided constitutionally ineffective assistance in failing to raise the claim on direct appeal and his explanation of his strategy does not constitute "cause" sufficient to overcome the procedural bar.

The fundamental miscarriage of justice exception to the doctrine of procedural bar is applicable only when a petitioner asserts a claim of actual innocence.  <u>Herrera v. Collins</u>, 506 U.S. 390, 403-404 (1993); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339-341 (1992); <u>see also</u> <u>Schlup v. Delo</u>, 513 U.S. 298 (1995).  Under <u>Schlup</u>, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." <u>Id.</u> at 316.  Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." <u>Id.</u> at

329. Petitioner in this case does claim to be actually innocent of the crimes for which he was convicted. <u>See</u> Dkt. # 1, Ex. G at ¶ 13. However, he presents no new evidence supporting his claim of actual innocence.  Therefore, the Court finds that Petitioner has failed to demonstrate that he falls within the fundamental miscarriage of justice exception to the procedural bar doctrine.

As a result of Petitioner's failure to demonstrate either "cause and prejudice" or that a fundamental miscarriage of justice would occur if his claims are not considered, this Court is procedurally barred from considering Petitioner's double jeopardy claim.

## *CONCLUSION*

Upon careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States.  Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

2.      A separate Judgment shall be entered in this case.

**DATED** this 19th day of January, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT